**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

C.E.,

Petitioner,

v.

3:26cv1053
ELECTRONICALLY FILED

LEONARD ODDO
*in his official capacity as Warden, Moshannon Valley Processing Center*, ET AL.,

Respondents.

**MEMORANDUM ORDER OF COURT GRANTING IN PART AND DENYING IN PART C.E.'S PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)**

Pending is Petitioner C.E.'s Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Doc. 1).

## I. BACKGROUND

Petitioner filed his counseled habeas petition on June 5, 2026. (*Id.*).

In his habeas petition, Petitioner claims that: (1) his detention is governed by 8 U.S.C § 1226(a) ("Section 1226(a)"), not 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)") and therefore: (1) Respondents were required "to make an individualized determination before exercising their discretion to detain him," which they "did not and have not done," which is a violation of the Immigration and Naturalization Act ("INA") (First Cause of Action); (2) his detention, governed by Section 1226(a), without a bond hearing violates the Fifth Amendment's Due Process Clause (Second Cause of Action); (3) Respondents' termination of his parole and return of Petitioner to custody without giving him written notice of the termination violated 8 U.S.C. § 1182(d)(5)(A), (Section 212(d)(5)(A) of the INA), and 8 C.F.R. § 212.5(e)(2)(i) (Third Cause of Action); (4) his

termination of parole and detention without prior notice and a pre-deprivation hearing violates the Fifth Amendment's Due Process Clause (Fourth Cause of Action); (5) Respondents' arrest and detention of Petitioner "despite his valid parole is arbitrary and capricious because DHS provided no justification, let alone a reasoned explanation, for the effective termination and detention, despite statutory and regulatory requirements to do so, and thus, Petitioner's detention violates the Administrative Procedures Act ("APA") (Fifth Cause of Action); (6) DHS' failure to follow 8 C.F.R. § 212.5(e) "when it detained C.E. despite his valid and active parole, effectively terminating his parole without providing him any notice and without making an individualized determination as to whether his parole should be terminated," violates the *Accar*di doctrine (Sixth Cause of Action); (7) Petitioner's detention without a bond hearing for more than six (6) months is unreasonably prolonged and thus, a violation of the Fifth Amendment's Due Process Clause (Seventh Cause of Action); and (8) his "detention is not reasonably related to a legitimate goal as he is neither a danger nor a flight risk," and therefore, "violates the substantive protections of the Due Process Clause" (Eighth Cause of Action). (*Id.* at 38-44).

By way of relief, Petitioner's habeas petition seeks an Order that includes: (1) enjoining Respondents from transferring Petitioner outside this District while this habeas petition is pending "unless Petitioner requests and is in agreement with such a transfer;" (2) declaring that "Petitioner's detention violates the Due Process Clause of the Fifth Amendment, the INA, the APA, governing regulations, and the *Accardi* doctrine;" (3) issuing "a Writ of Habeas Corpus requiring that Respondents release Petitioner immediately, returning him to the status of liberty he enjoyed prior to the recent detention, and that he not be re-detained without notice and an opportunity to be heard at a pre-deprivation hearing where the government will have the burden of showing by clear and convincing evidence that his re-detention is authorized under

§ 1226(a) with alternatives to detention and ability to pay considered, or alternatively, this Court "conducting a constitutionally adequate, individualized bond hearing for the Petitioner within fourteen days," or alternatively, ordering Respondents "to carry out such a hearing in front of a neutral and impartial adjudicator," where "ICE must bear the burden of establishing by clear and convincing evidence that detention is justified by changed circumstances," "[t]he adjudicator must meaningfully consider alternatives to imprisonment such as release on recognizance, parole, or electronic monitoring," "[T]he adjudicator must meaningfully consider Petitioner's ability to pay if setting a monetary bond," and Respondents are enjoined "from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2);" and (4) awarding reasonable attorneys' fees and costs to Petitioner pursuant to the Equal Access to Justice Act ("EAJA"). (*Id.* at 44-45).

On June 15, 2026, Respondents filed their response in opposition to Petitioner's habeas petition. (Doc. 8). In their response, Respondents argue that Petitioner is an "arriving alien" who is lawfully detained pursuant to Section 1225(b)(2)(A) and his detention does not violate the Fifth Amendment's Due Process Clause. (*Id.* at 6-13).

On June 22, 2026, Petitioner filed a Reply to Respondents' opposition brief. (Doc. 9). Therein, Petitioner reiterates his Section 1225(b)(2)-related and parole-related claims and concludes: "The proper remedy for Petitioner's § 1225(b)(2)-related and parole-related claims is immediate release. In the alternative, this Court should order C.E. receive a burden shifted bond hearing under *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020)." (*Id.* at 5).

On August 27, 2026, Respondents filed a Supplemental Response, as ordered by this Court, that addressed Petitioner's *German Santos* claim regarding the duration of his detention. (Doc. 13).

First, Respondents assert:

> The Court should not review Petitioner's detention under the four-factor test the Third Circuit set out in *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). The Third Circuit's decision in *German Santos* pertained to a petitioner detained under § 1226(c) - which pertains to the detention of criminal aliens and is not applicable here.
>
> . . .
>
> This case is different - Petitioner may receive an individualized bond hearing if the Court grants his habeas petition to the extent that it seeks an individualized bond hearing under § 1226(a).

(*Id*. at 3-4) (footnote omitted).

Second, Respondents posit:

> Indeed, courts in this District have applied the *German Santos* analysis to petitioners detained under § 1226(a), but only after awarding a § 1226(a) bond hearing, which has not occurred in this case. Indeed, Petitioner's opportunity to seek release through an order directing an immigration judge to conduct an individualized bond hearing under § 1226(a) is sufficient to justify different treatment from § 1226(c) detainees, and a compelling reason not to apply *German Santos* to this case at this juncture.

(*Id*. at 4).

Third, Respondents argue that "the four-factor test set out by the Third Circuit [in *German Santos*] does not favor relief for Petitioner," *id.* at 5, setting forth in detail the bases for this position:

> In sum, the four factors under *German Santos* show that Petitioner has not been detained for an unreasonable period of time; that his immigration proceedings are moving along appropriately; that the government has not acted in bad faith to delay the immigration proceedings; and that he is detained at a non-punitive processing center. Accordingly, Petitioner has not shown that his detention violates due process under the *German Santos* framework.
>
> . . .
>
> And because due process has not been offended based on the length of his detention, the Court should not order a bond hearing at which DHS bears the burden of proof.

(*Id*. at 7).

On September 3, 2026, Petitioner filed a Sur-Reply to Respondents' Supplemental Response. (Doc. 16).

In his Sur-Reply, Petitioner first cites to the recent decision of the United States Court of Appeals for the Third Circuit's recent decision in *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026*)*, and asserts that pursuant to the *Buele Morocho* decision, Petitioner should be immediately released from custody: "This is especially warranted because when Petitioner was detained, he had active and valid parole, such that his detention violated the Due Process Clause, the Immigration and Nationality Act ("INA"), and governing regulations. And critically, Respondents have made no representation or provided any record that C.E. is a danger or a flight risk such that his detention is warranted." (*Id*. at 4, 5).

Alternatively, Petitioner reiterates his position that given C.E.'s unreasonably prolonged detention under *German Santos,* this Court should order Respondents to provide Petitioner with a bond hearing at which the government bears the burden by clear and convincing evidence to justify Petitioner's detention as to danger and flight risk." (*Id*. at 4, 6-8).

Petitioner attached to his Sur-Reply a September 2, 2026 Affidavit with respect to the conditions he experienced at MVPC and is experiencing at North Lake Processing Center ("NLPC"), where he has been detained since on or about July 24, 2026. (Doc. 16-1).

On October 13, 2026, Petitioner filed a "status report letter to update the Court on recent caselaw applying *Buele Morocho* in this District and other district courts in the Third Circuit." (Doc. 20).

Accordingly, Petitioner's habeas petition has been fully briefed and is ripe for adjudication.

## II. DISCUSSION AND FINDINGS

Petitioner asserts in his habeas petition, and Respondents do not dispute, that: (1) Petitioner is a native and citizen of Haiti; (2) on February 20, 2024, Plaintiff entered the United States ("U.S.") with a Department of Homeland Security ("DHS") appointment through the CBP One application; (3) DHS issued Petitioner a Notice to Appear ("NTA"), placed him into removal proceedings, and granted Petitioner parole until February 18, 2026, while his removal proceedings were ongoing; (4) Petitioner applied for Temporary Protected Status ("TPS") based on his Haitian citizenship in August 2024 as well as for asylum on February 10, 2025; (6) on December 3, 2025, Petitioner was making deliveries on his e-bike, when he was arrested and charged with two infractions under New York Vehicle and Traffic Law § 1212 (reckless driving, a misdemeanor) and two counts of obstructing governmental administration in the second degree (also a misdemeanor); (7) Petitioner was processed for a desk appearance ticket at the Nassau County Police Department, but before he was released, on December 3, 2025, he was arrested by Immigration and Customs Enforcement ("ICE") pursuant to a Form I-200 warrant and detained; (7) Petitioner is not subject to a final order of removal; (8) Petitioner has been detained for more than six (6) months (now more than ten (10) months); (9) Petitioner was originally detained (for less than one week) by ICE at the Orange County Jail in Goshen, New York; (10) on December 5, 2026, ICE issued a Notice of Custody Determination with respect to Petitioner which stated: "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be Detained by the Department of Homeland Security;" (11) on December 9, 2025, Petitioner was transferred to Moshannon Valley Processing Center ("MVPC"); (12) on or around May 14,

2026, Petitioner was transferred to FCI Lewisburg; and (13) on or about May 18, 2026, Petitioner was transferred back to MVPC. (Doc. 1 at 1-2, 3, 7-9, Doc. 1-5).

In *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026), the United States Court of Appeals for the Third Circuit recently concluded, with respect to two (2) petitioners who had entered the U.S. without inspection years prior to their being detained by ICE in the interior of the U.S., that their detention was governed by 8 U.S.C. § 1226, and not 8 U.S.C. § 1225(b) because "§ 1225(b) governs noncitizens arriving to the United States whereas § 1226 governs those already within our borders." *Buele Morocho*, 2026 WL 2546223, at *5.

The Court finds that the reasoning and conclusions set forth by the Court of Appeals for the Third Circuit in *Buele Morocho, supra.*, are applicable to Petitioner, who was detained in the interior of the U.S. almost two (2) years after he entered the U.S. and was paroled, and therefore, Petitioner's detention governed by Section 1226(a), not Section 1225(b).

The Court further finds, under the undisputed facts of this case, that: (1) Respondents' conduct with respect to Petitioner violated the INA and Petitioner's rights under the Fifth Amendment's Due Process Clause; and (2) the appropriate relief for said violations is a bond hearing before an immigration judge ("IJ"), and not, as alternatively requested by Petitioner, a bond hearing held by this Court or immediate release from custody.

The next question, then, is who bears the burden of proof at the bond hearing to which Petitioner is entitled after being detained by Respondents without a bond hearing for more than ten (10) months because Respondents took the ultimately incorrect position that Petitioner's detention was governed by Section 1225(b).

While Respondents assert that Petitioner only is entitled to a bond where Petitioner will bear the burden of proof, the question of who bears the burden of proof is more nuanced.

More specifically, the Court finds that where Petitioner has been detained by Respondents without a bond hearing for more than ten (10) months, when Petitioner's detention is governed by Section 1226(a), to determine whether, at the required bond hearing, the burden rests on the Government to "put forth clear and convincing evidence that continued detention is necessary," or with Petitioner, it is necessary to assess whether Petitioner's detention has been unreasonably prolonged in violation of Petitioner's rights under the Fifth Amendment's Due Process Clause, by examining the "nonexhaustive list of four factors" set out by the Court of Appeals for the Third Circuit in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). *German Santos*, 965 F.3d at 213. *See German Santos*, 965 F.3d at 214 (explaining:"'[W]hen detention becomes unreasonable, the Due Process Clause demands a bond hearing'.") (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011)); *Foula Bah*, 2026 WL 2561261, at *2 (explaining: "Utilizing the *German Santos* framework, courts in this District have previously concluded that Third Circuit precedent does not categorically foreclose a burden-shifted bond hearing for § 1226(a) detainees experiencing prolonged detention. As such, the Court will evaluate the following four *German Santos* factors to determine which party bears the burden of proof in this initial bond hearing") (citations and footnotes omitted).

The four (4) *German Santos* factors are: (i) the duration of detention; (ii) whether the detention is likely to continue; (iii) reasons for the delay; and (iv) whether the detainee's conditions of confinement are "meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 210–11.

When considering whether detention has become unreasonable: "The most important factor is the duration of detention. While there is no bright-line threshold of time that permits a court to presume that detention has crossed the line from reasonable to unreasonable, detention does become '"more and more suspect"' the longer it continues." *Foula Bah*, 2026 WL 2561261, at *3 (quoting *German Santos*, 965 F.3d at 211 (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)). *See also Niangane v. Mullin et al*., Civ. No. 3:26-815, 2026 WL 2280905, at *3 (W.D. Pa. Aug. 7, 2026) (Haines, J.) ("The first and 'most important' factor is the duration of detention") (quoting *German Santos*, 965 F.3d at 210). Thus, in *German Santos*, where the petitioner was being held pursuant to Section 1226(c), the Court of Appeals for the Third Circuit noted: "in *Chavez-Alvarez*, we held that a lawful permanent resident's detention became unreasonable sometime between six months and one year. *German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez v. Warden York Cnty. Prison,* 783 F.3d 469, 478 (3d Cir. 2015).)

Here, where Petitioner has been detained for more than ten (10) months without a bond hearing, the Court finds that the first *German Santos* factor weighs in favor of Petitioner. *See Foula Bah*, 2026 WL 2561261 , at *3 (concluding that the *German Santos* duration factor weighed in favor of the petitioner where he had been detained for more than 11 months); *Niangane*, 2026 WL 2280905, at *3 (determining as to the *German Santos* duration factor: "While these cases do not establish a fixed six-month rule here, they confirm that Petitioner's nine-month detention is sufficiently lengthy to weigh in favor of relief. Accordingly, the Court finds the duration of Petitioner's detention is substantial and weighs strongly in favor of granting relief.") (citations to United States Supreme Court and Court of Appeals for the Third Circuit cases omitted).

The second factor to consider is "whether the detention is likely to continue," *i.e.*, what is the procedural posture of Petitioner's removal proceedings. *German Santos*, 965 F.3d at 211.

With respect to this query, the Court takes judicial notice of the Automated Court Information page of the Executive Office for Immigration Review ("EIOR"), which indicates that: (1) on April 23, 2026, an immigration judge ordered Petitioner's removal from the United States; (2) on May 19, 2026, Petitioner filed an appeal of the IJ's decision to the BIA, which currently is pending; (3) Petitioner's brief was received by the BIA on September 21, 2026; and (4) the briefing schedule has expired for DHS to file a brief with the BIA and DHS did not file a brief. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited October 14, 2026). Based on this information, the Court further finds that if the BIA affirms the IJ's decision, it is a reasonable conclusion that Petitioner will appeal that decision to the appropriate Court of Appeals.

Given the current procedural posture of Petitioner's removal proceedings, as detailed above, the Court finds that Petitioner's detention is likely to continue for the foreseeable future, and thus, this *German Santos* factor weighs in Petitioner's favor. *See German Santos,* 965 F.3d at 212 (concluding that this factor weighed in the petitioner's favor where the petitioner was awaiting BIA decision and potential Third Circuit review); *Foula Bah*, 2026 WL 2561261, at *3 (concluding that this *German Santos* factor weighed in favor of the petitioner because "[a]lthough the parties have already finished briefing before the BIA . . . the BIA has not yet issued a decision, and upon receiving a decision, there is a possibility of further appeal to the Third Circuit.").

The third *German Santos* factor is the reason for the delay. Notably:

> in assessing the impact of the reasons for delay upon the reasonableness of detention, a petitioner's "appeals and applications for discretionary relief [are not

> held] against him[.]" [*German Santos*, 965 F.3d at 212]. However, neither are delays or alleged errors held against the government "[a]bsent carelessness or bad faith[;]" for "[n]o system of justice can be error-free, and those errors require time to fix." *Id.* (citing *Diop*, 656 F.3d at 234).

*Foula Bah*, 2026 WL 2561261, at *3.

Here, Respondents do not argue that Petitioner has been the reason for any delay in his removal proceedings and there is no allegation by Petitioner nor evidence of record that Respondents have acted carelessly or in bad faith with respect to Petitioner's removal proceedings. Accordingly, the Court finds that this *German Santos* factor is neutral as to both parties. *See id.* (explaining: "Here, neither party alleges that Respondents have improperly delayed the proceedings, but Respondents allege that Petitioner's request for a one-month continuance before the BIA should be held against him. Petitioner's one minor continuance, however, cannot 'credibly be considered as a factor in the length of his detention' because the Court would find his detention unreasonable even at ten months (his current detention length minus the length of the continuance" and concluding: "As such, this factor is neutral as to both parties.") (citations omitted).

Finally, the fourth *German Santos* factor is whether the detainee's conditions of confinement are "meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 211.

When assessing the reasonableness of a petitioner's detention, "we cannot ignore the conditions of confinement." *Id.* at 212–13 (citing *Chavez-Alvarez*, 783 F.3d at 478). As explained by the *Foula Bah* court:

> In particular, a district court must examine the factual circumstances particular to the petitioner in order to assess whether "his detention is indistinguishable from criminal punishment[,]" "[d]espite its civil label[.]" *See* [*German Santos*, 965 F.3d] at 210.[4]

> [footnote 4: A court in this District previously recognized that conditions at Moshannon Valley Processing Center may resemble prison-like confinement. *See, e.g.*, *C.B. v. Oddo*, 2025 WL 2977870, at *7 (W.D. Pa. Oct. 22, 2025).]

*Foula Bah*, 2026 WL 2561261, at *3.

Here, the Record reflects that during Petitioner's more than ten (10) months of being detained, Petitioner spent the majority of his time at civil detentions centers (first MVPC and since on or about July 24, 2026, at NLPC), but Petitioner also spent less than one (1) week at the Orange County Jail and approximately four (4) days at FCI Lewisburg.

Significantly, Petitioner filed a September 2, 2026 Affidavit with respect to the conditions he experienced at MVPC and is experiencing at NLPC. (Doc. 16-1).

In his Affidavit, Petitioner declares, under penalty of perjury, that he is being subjected to the following conditions at NLPC: (1) Petitioner is only permitted to be outside in the yard one time per day; (2) the lights are on in NLPC from 5:00 AM until 11:45 PM; (3) Petitioner only gets food three (3) times a day, at 5:00 AM, 11:00 AM, and 6:00 PM; (4) food is limited and "is like food for animals. For example, at 5:00 AM, we get a single piece of bread and milk. At 6:00 PM, we get boiled water and beans;" (5) the water Petitioner is given to drink and to brush his teeth is dirty; (6) when Petitioner requested that his teeth be cleaned because of concern for an infection, he was told they do not do teeth cleaning and that his option was to have his tooth extracted; and (7) bathing water is very hot and hurts Petitioner's skin. (*Id.*).

Petitioner further declares, under penalty of perjury: "The conditions at Moshannon were similar to North Lake. The lights were on from 5:00 AM to midnight. The food was the same." (*Id.*).

To the contrary, the Government has not provided any evidence to support that Petitioner's detention has not been penal in nature other than:

> [P]ublicly available information indicates that North Lake Processing Center is owned/operated by the Geo Group, Inc., which also owns/operates Moshannon Valley Processing Center. https://www.geogroup.com/facilities/north-lake-processing-center/. North Lake Processing Center appears to house immigration detainees exclusively. There are certainly aspects of the conditions at North Lake Processing Center that resemble criminal detention (i.e., he is not free to leave), but there are also aspects of Petitioner's conditions of confinement that are meaningfully different from criminal punishment. Primarily, unlike the petitioner in *German Santos*, Petitioner does not appear to be held in a prison alongside convicted criminals.

(Doc. 13 at 6-7).

The Court finds, based on the facts set forth in Petitioner's September 2, 2026 Affidavit, which are unrebutted by Respondents, Petitioner has sufficiently established that his conditions of confinement have not been "meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 211. *See Nunez v. Oddo*, Civ. No. 3:25-143, 2025 WL 2443437, at *5 (W.D. Pa. Aug. 25, 2025) (Kelly, J.) (concluding: "Petitioner is not free to leave MVPC, and has provided sufficient contemporary, persuasive evidence in his declaration that his conditions of confinement are like those of a prison. Respondents' attorney argument is insufficient to rebut Petitioner's actual evidence. Respondents had the opportunity to submit declarations or other up-to-date evidence in support of their argument, but chose not to do so.") (citation omitted). Accordingly, this *German Santos* factor weighs in favor of Petitioner.

In conclusion, the Court finds, upon balancing the *German Santos* factors as applied to this case, where three (3) of the *German Santos* factors weigh in Petitioner's favor, including the most important one, duration of detention, and one (1) *German Santos* factor remains neutral, that Petitioner's detention has become unreasonable, and therefore, due process entitles Petitioner to a bond hearing where "[t]o justify [Petitioner's] continued detention," "the Government must put forth clear and convincing evidence" to "support a finding that continued detention is needed to prevent him from fleeing or harming the community" and "[i]f it cannot, it

must release him." *German Santos*, 965 F.3d at 213-14 (citing *Chavez-Alvarez*, 783 F.3d at 477-78). *See also Foula Bah*, 2026 WL 2561261, at *4 (concluding: "[B]ecause two factors weigh in Petitioner's favor, while two remain neutral, the Court finds, based upon the specific facts of the detention before it and underneath the standard set within *German Santos*, that Petitioner's detention under § 1226(a) has become unreasonable. Thus, the burden of proof at the initial bond hearing will be placed upon the Government. 'To justify [Petitioner's] continued detention,' 'the Government must put forth clear and convincing evidence' to 'support a finding that continued detention is needed to prevent him from fleeing or harming the community[;]' '[i]f it cannot, it must release him.' *German Santos*, 965 F.3d at 213-14 (citing *Chavez-Alvarez*, 783 F.3d at 477-78).").

Accordingly, the Court GRANTS Petitioner's habeas petition and ISSUES the writ on these terms: (1) Respondents shall cause Petitioner to be taken to a neutral immigration judge of the Executive Office of Immigration Review for an individualized bond hearing to occur within 30 days of this Order, or else release Petitioner by such date; (2) Respondents shall ensure that such a hearing includes the required due process, *i.e.*, at a minimum, factfinding based on a record produced before the decisionmaker and disclosed to Petitioner; an opportunity to make arguments on the Petitioner's behalf; and the right to an individualized determination of Petitioner's interests. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022); and (3) Petitioner shall be responsible for securing the necessary transcripts and record of the bond hearing. The Court trusts the immigration judge to comply with this Order and ensure that Petitioner is provided due process, and therefore, the immigration judge shall explain his or her individualized determination on the record. *See Kamara v. Atty Gen. of U.S.*, 420 F.3d 202, 212 (3d Cir. 2005). Further, at the ordered bond

hearing, the burden shall be placed on Respondent to prove, by clear and convincing evidence, that continued detention is warranted to prevent Petitioner from fleeing or harming the community, and if they cannot, Petitioner must be released.

Otherwise, Petitioner's habeas petition is DENIED, including to the extent that Petitioner seeks an Order that: (1) enjoins Respondents from transferring Petitioner outside this District while this habeas petition is pending "unless Petitioner requests and is in agreement with such a transfer;" (2) requires the IJ to meaningfully consider "alternatives to imprisonment such as release on recognizance, parole, or electronic monitoring" and "Petitioner's ability to pay if setting a monetary bond;" (3) enjoins Respondents "from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2);" and (4) awards reasonable attorneys' fees and costs to Petitioner pursuant to the EAJA. (Doc. 1 at 44-45).

More specifically, the Court lacks jurisdiction to grant Petitioner's request that it enjoin Respondents from transferring him outside the jurisdiction of this Court while this matter is pending unless he requests the transfer and is in agreement with a transfer. Congress has vested the Secretary of Homeland Security and his/her delegates, such as U.S. Immigration and Customs Enforcement ("ICE") with the authority to detain aliens pending a decision on their removal proceedings. 8 U.S.C. §§ 1231(a)(2), 1226(a), (c)(1). And Congress has vested the Department of Homeland Security ("DHS") with the discretion to set the place of detention. 8 U.S.C. § 1231(g)(1); *Sinclair v. Att'y Gen.*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006) (collecting cases). Within DHS' discretion is the authority to transfer aliens from one detention center to another. *Calla-Collado v. Att'y Gen*., 663 F.3d 680, 685 (3d Cir. 2011). Reading Section 1231(g)(1) together with Congress's limitations in Section 1252(a)(2)(B)(ii) on federal district courts' jurisdiction to review discretionary actions by DHS, federal district courts have

concluded that they lack jurisdiction to review DHS' decisions under Section 1231. *See, e.g.*, *Jane v. Rodriguez*, No. 20-5922, 2020 WL 10140953, *1-2 (D.N.J. May 22, 2020) (citing cases). Nor does the All Writs Act, 28 U.S.C. § 1651, provide the Court with jurisdiction to enjoin transfer. *Barrios v. Att'y Gen.*, 452 F. App'x 196, 198 (3d Cir. 2011) (jurisdiction-stripping provision in Section 1252(g) of INA, which is identical to jurisdiction-stripping language of Section 1252(a)(2)(B)(ii), is not superseded by All Writs Act).

Further, the Court will not, at present, order the IJ to consider detention alternatives and Petitioner's ability to pay at the ordered bond hearing. Rather, the Court will "allow the IJ to determine in the first instance whether the additional procedural safeguards requested by Petitioner are necessary or appropriate. In the event that Petitioner believes the IJ has not afforded him constitutionally adequate procedures, he may apply to this Court for further relief." *Brito Rivero v. Oddo*, Civ. No. 3:26-776, 2026 WL 1382246, at *2 (W.D. Pa. May 18, 2026) (Fischer, J.).

Moreover, with respect to Petitioner's request that Respondents be enjoined at the ordered bond hearing "from invoking the automatic stay provision contained in 8 C.F.R. § 1003.19(i)(2), which is triggered when an immigration judge grants a noncitizen release on bond and the government appeals that decision to the Board of Immigration Appeals," Petitioner's request "is too speculative to support a grant of habeas relief." *Cielo v. Warden*, Civ. No. 3:26-1055, 2026 WL 2204641, at *3 (N.D. Ind. July 30, 2026). *See also Tequida Valencia v. Baltazar*, Civ. No. 26-1869, 2026 WL 1453642, at *5 (D. Colo. May 22, 2026) (determining: "Mr. Tequida Valencia asserts that the Court should preemptively enjoin various actions the Government might take after his bond hearing. Those actions include invoking the 'automatic stay' regulation, 8 C.F.R. § 1003.19(i)(2) . . . . But whether Respondents will take those actions

in this case is purely speculative. To the extent Respondents take further actions that Petitioner believes are unlawful and within this Court's jurisdiction to correct, he may move the Court for further proceedings as appropriate.”); *Cabrera-Hernandez v. Bondi*, Civ. No. 5:25-197, 2025 WL 3684694, at *3 (S.D. Tex. Dec. 2, 2025) (same). Again, in the event that Respondents invoke the automatic stay provision contained in 8 C.F.R. § 1003.19(i)(2), and Petitioner opines that said invocation is improper, Petitioner may apply to this Court for further relief.

Additionally, because: (1) Respondents filed their responses in opposition to Petitioner’s habeas petition prior to the Court of Appeals for the Third Circuit issuing its decision in *Buele Morocho, supra.;* (2) the *Buele Morocho* decision addressed petitioners who were not similarly situated to Petitioner; and (3) there is a split of authority amongst numerous other federal courts of appeal and district courts as to whether the detention of a petitioner similarly situated to Petitioner is governed by Section 1225(b) or Section 1226(a), the Court finds that Respondents’ position was substantially justified in this case. Accordingly, no costs or attorney fees shall be awarded pursuant to the EAJA.

SO ORDERED this 14th day of October, 2026.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel of Record